4

CARNEY ET AL. V. PERK ET AL.

(No. 908462—Decided March 26, 1973.)

Court of Common Pleas of Cuyahoga County.

*Mr. John T. Corrigan*, prosecuting attorney, *Mr. John L. Dowling* and *Mr. Jeffrey L. Kocian*, for plaintiffs.
*Mr. Daniel J. O'Loughlin* and *Mr. Joseph W. Bartunek*, for defendants.

McMONAGLE, J.   The plaintiffs herein are John J. Carney, Anthony J. Garofoli, Robert E. Hughes and Saul

G. Stillman, the duly appointed and acting members of the board of elections of Cuyahoga County, Ohio. The defendants are Ralph J. Perk, the mayor of the city of Cleveland; Richard E. Hollington, Jr., the law director and acting mayor; J. William Petro, executive secretary to the mayor; Edmund J. Turk, president of council; Robert D. Hart, executive assistant to the mayor; the city of Cleveland, a municipal corporation; Francine M. Panehal, Joseph A. Lombardo, Michael Zone, Francis E. Gaul, Michael L. Climaco, Theodore E. Sliwa, Dennis J. Kucinich, Margaret McCaffery, Richard M. Harmody, William Franklin, James H. Bell, Charles V. Carr, Robert C. McCall, Joseph M. Kowalski, Ralph J. Perk, Jr., Robert D. Lavdis, Carrie Cain, James H. Boyd, Basil M. Russo, George L. Forbes, Odus Townsend, John C. Cimperman, Chester Herrod, Sidney Frost, Lawrence W. Duggan, Ceasar Moss, Carol A. McClendon, Paul T. Haggard, John E. Barnes, Gerald T. McFaul, John J. Prince and George L. Blaha, members of council of the city of Cleveland; and Barbara A. Perk, Dorothy Parsons, Ronald S. Owens, Joseph A. Kocab and June N. Zippilli. The action came before the court upon the filing by the plaintiffs of their "Complaint for Declaratory Judgment" and later their "Amended Complaint for Declaratory Judgment."

On January 26, 1973, a supplemental motion to dismiss was filed on behalf of defendants. This, together with prior motions to dismiss, was submitted to the court on the arguments and briefs of counsel. All defendants have joined in the motions to dismiss. Where the motion to dismiss is mentioned herein, it encompasses and includes all motions to dismiss.

The prayer of the complaint is that the court declare the rights, status and legal relations of the parties, and particularly to verify and grant the following:

a. That the language in section 140 of the Cleveland Charter "or circulate or seek signatures to any petition provided for by primary or election laws" pertains only to partisan political petitions and petitions relating to candidacies of individuals, and specifically does not pre-

clude classified employees of Cleveland from circulating or seeking signatures on petitions designed to amend the Charter of the city of Cleveland;

b. That, if the court does not arrive at the judgment in a above, the court find that the language "or circulate or seek signatures to any petition provided for by primary or election laws" is unconstitutional in that it abrogates the classified employees' rights of free speech, freedom of association and equal protection of the laws without the showing of a compelling state or city interest to require such abrogation;

c. That petitions of the type set forth in "Exhibit C" were being lawfully circulated by classified employees of the city of Cleveland and that the plaintiffs have jurisdiction under R. C. 3501.11 (J) and 3599.15 to inquire into the matter of the alleged destruction of such petitions;

d. That, regardless of whether or not the said part-petitions were being lawfully circulated, the plaintiffs have jurisdiction to investigate the matter by virtue of R. C. 3511.01 (J) and R. C. 3599.13, particularly the wording of R. C. 3599.13 which reads in part as follows:

"No person shall * * * seek by intimidation or threats to influence any person to sign or refrain from signing such [initiative] petition, or from circulating or abstaining from circulating such petition * * *"; and

e. To allow such other and further relief, including costs, as may be justified.

Defendants contend that the petitions were invalid and, therefore, witnesses could not be interrogated with reference to them; that the plaintiffs are without standing to maintain a declaratory judgment action; that the case is moot; that R. C. 3501.11 (J) allows only one investigation and one report, which was completed.

Submitted in support of the motion to dismiss was a copy of the minutes of the hearing by the board of elections on the matter which is the subject of the within action. It was also stipulated that such matter had been referred to the Cuyahoga County prosecuting attorney in accordance with R. C. 3501.11 (J) and that on January 5, 1973, he had

reported that his investigation of the matter had been concluded.

The court considers the instant proceedings as being in accordance with Civil Rule 12 and disposed of as provided in Civil Rule 56, and that all material facts are properly before the court and undisputed.

The complaint alleges that the plaintiffs, as the board of elections of Cuyahoga County, Ohio, initiated an investigation for the purpose of determining the facts surrounding certain initiative petitions or part-petitions which had been put into circulation with the ultimate objective of amending the Charter of the city of Cleveland so as to reduce the size of the city council, and that plaintiffs proceeded under authority of R. C. 3501.11 (J) to hold a hearing on the subject of the reported destruction of petitions, taking cognizance of R. C. Section 3599.15. That section provides:

"No person shall purchase, steal or attempt to steal, sell or attempt to sell, or wilfully destroy or mutilate any initiative, supplementary, referendum, recall, or nominating petition, or any part thereof, which is being or has been lawfully circulated; provided that the words purchase and sell do not apply to persons paying or receiving pay for soliciting signatures to or circulating a petition or petition paper.

"Whoever violates this section shall be fined not less than one hundred nor more than five hundred dollars or imprisoned not more than five years."

It is further alleged that objections were interposed to the holding of the hearing—it being the contention of defendants that the plaintiffs lacked jurisdiction to inquire into the circumstances and facts concerning such petitions and that the petitions were circulated by classified employees of the city of Cleveland and therefore unlawful and invalid under the provisions of section 140 of the Cleveland Charter. That section provides:

"No person about to be appointed to any position in the administrative service of the city shall sign or execute a resignation, dated or undated, in advance of such appoint-

ment. No person in the service of the city shall discharge, suspend, lay off, reduce in grade or in any manner change the official rank or compensation of any person in such service, or promise or threaten to do so, for withholding or neglecting to make any contribution of money or service or any valuable thing for any political purpose. No person in the service of the city shall use his official authority to influence or coerce the political action of any person or body, or to interfere with any nomination or election to public office. No person in the classified service of the city shall act as an officer of a political organization or take part in a political campaign, or serve as a member of a committee of any such organization, or circulate or seek signatures to any petition provided for by primary or election laws, or act as a worker in favor of or in opposition to any candidate for public office.''

It is obvious from the statutes and also from the various decisions of the Supreme Court of Ohio that the board of elections have broad powers devolved upon them in the performance of their statutory duties.

During the hearing, defendant Hollington refused to answer any questions by reason of the claim of an attorney-client privilege interposed by defendant Turk and, as appears from the record, defendant Turk refused to testify upon advice of counsel, claiming a lack of jurisdiction, and also by reason of R. C. 3519.05 and 3519.06. (It would appear to be the contention that one person has affixed more than one signature to the petitions in question and that, therefore, the petitions could ultimately be held to be invalid. Since the validity of the hearing itself was questioned because of a contention that the petitions had become invalid and since the cited section authorizes the board of elections to determine the validity or invalidity of the petitions, it would logically appear that they would have a right to conduct a hearing which would bear upon such invalidity.)

The plaintiffs concluded that they did in fact have jurisdiction over the subject matter, in accordance with R. C. 3501.11, which provides:

''Each board of elections shall exercise by a majority vote all powers granted to such board by Title XXXV of

the Revised Code, shall perform all the duties imposed by law, and shall:

"* * *

"(J) Investigate irregularities, nonperformance of duties, or violations of Title XXXV of the Revised Code by election officers and other persons; administer oaths, issue subpoenas, summon witnesses, and compel the production of books, papers, records, and other evidence in connection with any such investigation; and report the facts to the prosecuting attorney * * *."

The law does not contemplate that every rumor, guess, surmise, complaint, claim or suspicion with reference to election matters which come to the attention of a board of elections should be tainted with a suspicion of criminality by its being referred to the prosecuting attorney without any investigation by the board.

It is also elementary that many matters that come to the attention of the board of elections and which at first glance may indicate the propriety or even the necessity of a criminal investigation will not be of such a nature, upon investigation, as to even warrant their being called to the attention of the prosecuting attorney. The law, therefore, has not only vested the board of elections with the authority to investigate alleged irregularities or violations of Title XXXV by election officers and other persons, but it has mandatorily enjoined the board to do so. This may be done either informally or, if the plaintiffs so decide, at a formal hearing. It is given the authority in connection therewith to administer oaths, issue subpoenas, summon and investigate witnesses, and compel the production of books, papers, records and other evidence in connection with such investigation.

A board of elections definitely has the authority to conduct an investigation when information comes to its attention of an alleged violation of R. C. 3599.15.

So it is to be seen that not only is the board of elections authorized to investigate, it is its duty to investigate and then, if the facts warrant it, refer the matter to the prosecuting attorney.

Section 140 of the Charter of the city of Cleveland at-

tempts to control activities of classified employees of the city, and its violation may subject such an employee to disciplinary proceedings, but the circulation of an initiative petition by such an employee could not invalidate the petition.

This also, in substance, is the ruling of the Supreme Court of Ohio in *Heidtman* v. *City of Shaker Heights*, 163 Ohio St. 109. The Supreme Court in the *Heidtman* case interprets G. C. 486-23, the wordage of which is apparently identical to section 140 of the Cleveland Charter.

A copy of the initiative petitions are attached to the complaint. Such petition was being "lawfully circulated" when its circulation was made, or had been made by a classified employee of the city of Cleveland. The circulation of such a petition or part-petition could never have the effect of or be the means of setting aside the statutes of Ohio authorizing an investigation by the board of elections, and could not nullify such an investigation.

The contention of the defendants that the plaintiffs did not have authority to conduct an investigation and hearing because the petitions had become invalid upon their coming into the hands of classified employees of the city of Cleveland is not well taken.

Beyond any question, the board of elections did have and does have jurisdiction to inquire into matters pertaining to the petitions which are the subject matter of the described inquiry.

It is difficult to understand why the members of a board of elections would come to the court for advice as to whether or not the investigation it instituted is legal and particularly where, at the hearing called by it, many witnesses were examined. Any board has the right in the first instance to determine its own jurisdiction. In the within matter, the board had obviously decided, by itself, that it did have the authority to do that which was done. The board herein is really questioning its own decision. A court, particularly in a civil proceeding, may not interfere with such a determination unless such action was questioned by a person adversely affected thereby—not the board itself—and

the board's determination of its jurisdiction could only be overturned by a finding that such action constituted a gross abuse of discretion.

If, before a board of elections acted, it first went to court to find out what it could do, the work of the board would never be accomplished.

However, as unusual as the circumstances that obviously impelled the bringing of this action by the members of the board of elections are, the court is passing upon each issue presented herein since a decision on the issue of mootness alone would probably not deter the filing of other similar declaratory actions which would only increase the civil dockets of overcrowded courts of common pleas.

In this action, members of the board of elections are really asking the court to advise them as to whether certain witnesses can refuse to testify at a hearing which the board itself has determined to be within its authority.

No person may refuse to appear or to testify as to matters within the scope of a hearing duly conducted by a board of elections except upon the assertion of a constitutional or statutory privilege. An assertion that a witness refuses to testify on advice of counsel does not relieve him of the obligation to testify. R. C. 3599.37 makes such failure or refusal a misdemeanor punishable by a fine of not less than $100 nor more than $1,000, or imprisonment of not less than 30 days nor more than 6 months. If the validity of the hearing or investigation is questioned, such can be asserted as a defense in the court proceedings.

While the law (R. C. 3501.11 (J)) states that members of a board of elections are authorized to issue subpoenaes and compel the production of evidence, etc., a board of elections does not have the authority to actually enforce its orders by contempt or other proceedings.

Where a witness refuses to appear pursuant to a subpoena, or if he does appear and refuses to testify—asserting reasons other than a constitutional or statutory privilege—the board of elections must invoke the assistance of a court in a direct proceeding against the witness, under R. C. 3599.37, which will be promptly disposed of by the

court without the yoke of an adversary civil proceeding involving, as here, 43 parties, and without the pleading and time conditions which control a civil lawsuit.

In the motions to dismiss which are before the court, the defendants contend further that the plaintiffs do not have standing to initiate a complaint for a declaratory judgment.

It is contended that the plaintiffs, John J. Carney, Anthony J. Garofoli, Robert E. Hughes and Saul G. Stillman, the duly appointed and acting members of the board of elections of Cuyahoga County, Ohio, are not "persons" as used in R. C. 2721.01 to 2721.15, particularly R. C. 2721.03, which reads:

"Any person interested under a deed, will, written contract, or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under such instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder."

Counsel argue that members of a board of elections may be proper defendants in a declaratory judgment action, but may not properly be parties plaintiff.

The court finds that the named plaintiffs herein may validly initiate a declaratory judgment proceeding as well as defend against one.

In summary, we have determined the following:

(1) The board of elections had the authority to initiate and conduct an investigation into the matter of the initiative petitions to reduce the size of council;

(2) Witnesses could not refuse to appear and give testimony concerning the circulation or destruction of any of the petitions or part-petitions, except by asserting a constitutional or statutory privilege;

(3) Obedience of an order of the board of elections to appear and/or testify is to be enforced by direct court proceedings against the witnesses; and

(4) The plaintiffs do have standing to bring a declaratory judgment action.

We must now consider the following question raised by the defendants:

Has an action in which the court is requested to make certain declarations pertaining to the validity of an investigation properly initiated under R. C. 3501.11 (J) by the members of a board of elections become moot when such members have concluded their investigation and reported the "facts" (elected by them therein) to the prosecuting attorney?

In addition to the undisputed facts which defendants contend make the issue herein moot, the court will take judicial notice of the fact that the Cleveland Charter amendment proposed by the initiative petition has been ordered submitted to the electorate.

A declaratory judgment action may be proper when the judgment entry would terminate or settle either a controversy between parties thereto, or some uncertainty existing between the parties as to their rights, status or legal relations as affected by a statute, ordinance, contract or franchise.

The comment following R. C. 2721.03 in the code section entitled declaratory judgments, states:

"This section makes it possible for any person interested in any of the instruments specified or affected by any of the legislation mentioned, to have any question of construction or validity, and also their rights, determined. This covers a large field of possibilities, among which are disputes between lessor and lessee, mortgagor and mortgagee, questions concerning insurance policies, deeds of trust, disputes between a city and a street railway company, or any public utility, and a vast number of other disputes too numerous to mention."

In *Walker* v. *Walker* (1936), 132 Ohio St. 137, the court stated, at page 139: "* * * according to the defendant's uncontradicted answer, there is in fact no longer a conflict between the terms of the separation agreement and those of the divorce decree."

The court held, at 139:

"The declaratory judgment act is a salutary, remedial measure and should be liberally construed and applied, but,

as in the instant case it does not require a court to render a futile judgment that would not terminate any uncertainty or controversy whatsoever."

If the investigation has been terminated or concluded by turning it over to the prosecutor, or it is a fact that the proposed amendment has been ordered on the ballot, is there a present existing controversy between the parties to this lawsuit, or do some uncertainties exist which would be terminated by a declaratory judgment decree.

In the final analysis, what plaintiffs are actually asking for herein is that the court advise them as to what they should have done when witnesses—asserting reasons other than constitutional or statutory privileges—refuse to testify at a valid board of elections hearing and thereby frustrate the proceedings. We consider that we have already done this in the pronouncements contained herein on the issues other than that of mootness presented in the motion to dismiss.

The assistant prosecuting attorney handling this case contends that it should not be dismissed as moot because it is possible that the investigation and hearing of the board of elections may be reinstituted. The court considers this contention as one describing a situation that is not within even the remotest area of being likely.

16 Ohio Jurisprudence 2d 597, Declaratory Judgments, Section 14 states:

"It is the established rule that a declaration will not be made as to future rights in anticipation of an event which may never happen. Courts will not attempt to decide the rights of parties upon a set of facts which are contingent or uncertain, since it would be a vain thing to pass upon the rights and liabilities of parties when it is not known, and cannot be known, whether the matter will ever progress enough to affect either the plaintiff or the defendant."

The court cannot perceive of any presently existing controversy between the parties hereto or any present existing uncertainties which would be terminated by a declaratory judgment decree.

The motion of the defendants to dismiss the action as moot is sustained for the reasons heretofore discussed.